[No. 7339-4-III.   Division Three.   June 30, 1987.]

THE STATE OF WASHINGTON, *Respondent*, v. ANTHONY
JAMES COURCY, *Appellant*.

*Duane R. Knittle, Mark A. Kunkler,* and *Weeks, Dietzen & Skala,* for appellant.

*Jeffrey C. Sullivan, Prosecuting Attorney,* and *Donald E. Kresse, Deputy,* for respondent.

THOMPSON, A.C.J.—Anthony Courcy appeals the trial court's denial of his motion to suppress evidence seized by police during an investigatory stop. We affirm.

On January 1, 1985, Officers Cruz, Vernon, and Morkert of the Yakima Police Department went to the Yakima Arcade in search of Anthony James Courcy, wanted for assault and unlawful imprisonment. Officer Cruz located a person matching the defendant's description in a movie booth, and asked the suspect to step into the light and show some identification. Mr. Courcy removed a clear plastic identification holder from his jacket and began to take out his driver's license. Officer Cruz saw a blue and black precisely folded paper "bindle" in the holder and immediately recognized it as a receptacle for drugs, usually cocaine. Mr. Courcy noticed Officer Cruz viewing the bindle and pulled the I.D. holder back to his chest. A brief struggle ensued with Mr. Courcy surrendering possession of the I.D. holder and its contends upon the arrival of Officer Morkert.

Officer Cruz testified as soon as he obtained the I.D. holder from Mr. Courcy, he removed the bindle and, opening it, confirmed it contained a white powdery substance. Officer Morkert, who arrived on the scene at the same time Mr. Courcy surrendered possession of the I.D. holder, testified Officer Cruz stepped back after getting the I.D. holder. Officer Morkert placed Mr. Courcy against the wall, frisked him, and then turned around in time to see Officer Cruz open the bindle, look inside, refold the paper, and put it away. Mr. Courcy was arrested for possession of a controlled substance. While in custody at the police station, after *Miranda* warnings were given, when shown the bindle, Mr. Courcy said: "It's cocaine".

Both Officer Cruz and Officer Morkert testified they had experience in cocaine arrests, had viewed "bindles" before, and immediately recognized the folded paper as a container for drugs. The defendant was found guilty after a bench trial.

The sole issue is whether the trial court erred when it denied the defendant's motion to suppress the folded paper

bindle and its contents, having concluded the bindle was contraband in plain view. The defendant argues that (1) Officer Cruz did not have probable cause to *seize* the folded paper bindle, and (2) even if he had probable cause to seize it, opening the paper without a warrant constituted an unreasonable search. His arguments are made under both the fourth amendment to the United States Constitution and article 1, section 7 of the Washington State Constitution, although he acknowledges that the first question, involving whether seizure was valid under the "plain view" exception, is essentially the same as the federal plain view doctrine because the three elements are the same. *See State v. Bell,* 108 Wn.2d 193, 199, 737 P.2d 254 (1987).

█ The parties have presented their arguments in terms of the applicability of the "plain view doctrine". However, where officers view contraband from an area which is not constitutionally protected, the "open view" doctrine applies, not "plain view". In either plain view or open view, no article 1, section 7 or Fourth Amendment search has occurred if evidence is in open view of officers. *State v. Kennedy,* 107 Wn.2d 1, 10, 726 P.2d 445 (1986); *State v. Myrick,* 102 Wn.2d 506, 514, 688 P.2d 151 (1984); *State v. Seagull,* 95 Wn.2d 898, 901–02, 632 P.2d 44 (1981). The transparent I.D. holder was produced by Mr. Courcy in response to a lawful request that he identify himself. The officer was conducting a legitimate investigatory stop. *Terry v. Ohio,* 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968); *State v. Williams,* 102 Wn.2d 733, 689 P.2d 1065 (1984). The bindle was seen without an intrusion into a constitutionally protected area, similar to those cases where officers view guns or contraband through a car window after having made a lawful stop. *Texas v. Brown,* 460 U.S. 730, 740, 75 L. Ed. 2d 502, 103 S. Ct. 1535 (1983); *State v. Gonzales,* 46 Wn. App. 388, 397, 731 P.2d 1101 (1986). Therefore, the inquiry narrows to whether the officers had probable cause to believe the item viewed was contraband, justifying seizure.

The trial court found Officer Cruz had the experience to

recognize the paper bindle as a container for contraband, and thus concluded under the circumstances of this case, the officer had probable cause to seize it. There is substantial evidence to support this finding. Although Officer Cruz testified he had no formal police training related to drug identification, he had "on the job" training and observed bindles such as this during street arrests; in his experience, the bindle always contained drugs. In 3 years with the Yakima Police Department, he had personally made four or five cocaine arrests and in almost every case, cocaine was packaged in paper bindles like the one seen in the defendant's transparent plastic identification holder. Officer Morkert also testified that when he arrived and saw the bindle, he immediately recognized it as a cocaine bindle. Finally, Officer Cruz testified that when Mr. Courcy realized the officer had spotted the bindle, he pulled it back to his chest.[1] This circumstance, coupled with the knowledge of a bindle's customary use, gave Officer Cruz probable cause to seize it. *See State v. Lair,* 95 Wn.2d 706, 716–17, 630 P.2d 427 (1981).

Whether opening the bindle was an unreasonable search is a separate question. Even though items are lawfully seized, a warrant is generally required to conduct a search thereof if the individual has an expectation of privacy in the item seized. *United States v. Chadwick,* 433 U.S. 1, 13, 53 L. Ed. 2d 538, 97 S. Ct. 2476, 2484 (1977). A seizure only affects the owner's possessory interests, whereas a search affects privacy interests vested in the contents. *Chadwick,* 433 U.S. at 13 n.8.

This case falls within the "single purpose container" doctrine which has developed around footnote 13 in *Arkansas v. Sanders,* 442 U.S. 753, 764 n.13, 61 L. Ed. 2d 235, 99 S. Ct. 2586, 2593 (1979). There, the Supreme Court said:

---

[1]Mr. Courcy regarded this movement as a normal reaction and not indicative of a guilty reaction. The court did not choose to accept his explanation and Mr. Courcy did not assign error to this finding.

330

Not all containers and packages found by police during the course of a search will deserve the full protection of the Fourth Amendment. Thus, some containers (for example a kit of burglar tools or a gun case) by their very nature cannot support any reasonable expectation of privacy because their contents can be inferred from their outward appearance. Similarly, in some cases the contents of a package will be opened to "plain view," thereby obviating the need for a warrant.

*United States v. Ross,* 456 U.S. 798, 72 L. Ed. 2d 572, 102 S. Ct. 2157 (1982) held there is no Fourth Amendment distinction between "worthy" and "unworthy" containers. Under Const. art. 1, § 7, *State v. Stroud,* 106 Wn.2d 144, 152, 720 P.2d 436 (1986) held locked containers may not be searched if discovered in a car during the arrest process. The court said by locking the container, the individual shows he or she reasonably expects the contents to remain private. However, because it was immediately apparent to the experienced officers the bindle contained contraband, Mr. Courcy did not have a reasonable expectation of privacy which would prevent opening the bindle or field testing it. Because of the appearance of the container itself, the contents were in effect in open view.

The continuing validity of the single purpose container rule has been commented upon and sometimes applied in both federal cases applying the Fourth Amendment and state cases from other jurisdictions. *See United States v. Johns,* 469 U.S. 478, 83 L. Ed. 2d 890, 105 S. Ct. 881, 886 (1985); *Robbins v. California,* 453 U.S. 420, 429, 69 L. Ed. 2d 744, 101 S. Ct. 2841, 2847 (1981), *overruled on other grounds in United States v. Ross, supra; United States v. Eschweiler,* 745 F.2d 435, 440 (7th Cir. 1984), *cert. denied,* 469 U.S. 1214 (1985); *United States v. Stevens,* 635 F. Supp. 1356, 1362 (W.D. Mich. 1986); *United States v. Shipp,* 578 F. Supp. 980, 994 n.53 (S.D.N.Y. 1984), *aff'd,* 754 F.2d 1427 (2d Cir.), *cert. denied,* 472 U.S. 1019 (1985); *State v. Owens,* 302 Or. 196, 729 P.2d 524, 530 (1986); *Commonwealth v. Kendrick,* 340 Pa. Super. 563, 490 A.2d 923, 929 (1985); *State v. Callari,* 194 Conn. 18, 478 A.2d

592, 596 (1984), *cert. denied,* 469 U.S. 1210 (1985). *See generally* 3 W. LaFave, *Search and Seizure* § 7.2(d), at 66–73 (2d ed. 1987).

Mr. Courcy cites *United States v. Miller,* 769 F.2d 554, 558–60 (9th Cir. 1985) as authority that officers needed a warrant here because this folded piece of paper could have held other items, as did the container in *Miller. Miller* rejected application of the single purpose container doctrine because the bag which was opened by police did not have a distinctive shape or odor that clearly identified its contents. The court stated:

> Law enforcement officers should not be permitted under the single–purpose container rule set out in *Sanders* footnote 13 to conduct warrantless searches of containers that, though unrevealing in appearance, are discovered under circumstances supporting a strong showing of probable cause. Extension of the exception in this manner would undermine the rationale behind footnote 13, which is premised on the idea that there can be no reasonable expectation of privacy when the "outward appearance" of a container, in the circumstances in which it is used, makes its contents obvious [citing LaFave].

*Miller,* at 560. *See also United States v. Johns,* 707 F.2d 1093, 1095–96 (9th Cir. 1983), *rev'd on other grounds,* 469 U.S. 478, 83 L. Ed. 2d 890, 105 S. Ct. 881 (1985) (rejecting application of single purpose container doctrine to bales of marijuana exhibiting distinctive odor). As noted in *Miller,* the Supreme Court in *Robbins v. California, supra,* on the record before it also rejected application of the single purpose container rule to opaque green plastic wrapped packages containing marijuana found in defendant's trunk. *Robbins* held the container must so clearly announce its contents that they are "obvious to an observer". *Robbins,* 453 U.S. at 428. However there, the court noted the officer did not make the necessary factual assertions this was a common way of packaging marijuana bricks. Nor was testimony presented the officer had the necessary identification experience. *Robbins,* 453 U.S. at 428. Here, however, there is such evidence. Because the container clearly announced

it contained contraband, any reasonable expectation of privacy as to its contents was lost.

Although Const. art. 1, § 7 affords greater protection to individuals against searches and seizures than does the Fourth Amendment, the result reached here is the same under either constitution. The focus under Const. art. 1, § 7 analysis is on a person's right to privacy and whether his private affairs have been intruded upon. *State v. Myrick, supra.* Essentially, this involves asking whether the individual has any legitimate expectation of privacy subject to intrusion. In applying the single purpose container doctrine, courts require virtual certainty that the container, in the circumstances viewed, holds contraband, as if transparent. *See* 3 W. LaFave § 7.2(d), at 71. This requirement provides the necessary added protection guaranteed by article 1, section 7. The distinctive nature of this container, coupled with the defendant's furtive gesture when it became apparent Officer Cruz had seen it, left Mr. Courcy no legitimate expectation of privacy in the contents of the bindle. *State v. Owens, supra,* upheld this approach in construing Oregon's constitution, similarly concerned with privacy, as not requiring a warrant for "opening and seizure of the contents of transparent containers or containers that otherwise announce their contents". *Owens,* at 206. We likewise hold such action by officers does not violate article 1, section 7 of the Washington State Constitution.

The trial court is affirmed.

GREEN and MUNSON, JJ., concur.

Reconsideration denied August 3, 1987.

Review denied by Supreme Court December 2, 1987.