THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. BRIAN PAUL INNIS, Defendant-Appellee.

Fourth District   No. 4—92—0145

Opinion filed November 12, 1992.

Thomas J. Difanis, State's Attorney, of Urbana (Norbert J. Goetten, Robert J. Biderman, and Rebecca L. White, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Robert I. Auler, of Auler Law Offices, P.C., of Urbana, for appellee.

JUSTICE COOK delivered the opinion of the court:

Defendant Brian Paul Innis pleaded not guilty to a charge of unlawful transportation of alcohol (Ill. Rev. Stat. 1989, ch. 95½, par. 11—502(a)) and requested a jury trial. The trial court granted defendant's motion to suppress all evidence seized as a result of the stop of his vehicle. After filing a certificate of impairment and declaration of intention to file an interlocutory appeal, the State appeals pursuant to Supreme Court Rule 604(a). (134 Ill. 2d R. 604(a).) We affirm.

On November 16, 1991, at about 4:20 p.m., defendant stopped his vehicle on a country road in rural Champaign County because he recognized a friend approaching from the other direction. Defendant's friend also stopped his vehicle in the road and they had a brief conversation while remaining in their vehicles. Moments after they stopped, two Department of Conservation vehicles approached with flashing lights and at least one of the conservation officers drove around the parked vehicles to block the roadway. As defendant began to pull away, he was flagged down by Department of Conservation police officer Kim Knight, and told to stop his truck on the side of the road.

Officer Knight then walked up to defendant's truck and told him to get out so she could search his vehicle for weapons. Officer Knight told defendant to stand in front of his vehicle and they had a short discussion. Officer Knight asked defendant if he had been hunting

earlier that day and informed defendant he was in a wildlife habitat. Defendant indicated he had killed a deer "earlier in the day" but that he was done hunting for the day. When the conservation officer searched defendant's truck, she found an open can of beer between the front seats and an open bottle of brandy behind the driver's seat. Defendant testified that the open alcohol was not visible from the officer's position standing on the road. After the conservation officer found the open alcohol, defendant was given a citation for unlawful transportation of an open alcoholic beverage in a motor vehicle in violation of section 11—502(a) of the Illinois Vehicle Code (Vehicle Code). Ill. Rev. Stat. 1989, ch. 95½, par. 11—502(a).

On December 6, 1991, defendant pleaded not guilty and requested a jury trial. On February 3, 1992, defendant filed a motion to suppress any and all evidence seized as a result of the stop and search of his vehicle on November 16. At the February 10, 1992, hearing on the motion to suppress, the State requested a continuance based on a February 10 letter from the Department of Conservation indicating that Officer Knight had been injured in an accident and had not yet been released by her doctor to return to work. The motion was denied because it was not in writing or supported by an affidavit as required by section 114—4(a) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1989, ch. 38, par. 114—4(a)), and because the State failed to show due diligence since there was no evidence presented that Officer Knight had been subpoenaed. At the hearing defendant was the only witness to testify in regard to the incident. After closing arguments by both parties, the trial court granted defendant's motion to suppress, finding as follows:

> "It's been proven by Mr. Innis' testimony that he violated 1113—01 [sic] [(section 11—1301 of the Illinois Vehicle Code (Ill. Rev. Stat. 1989, ch. 95½, par. 11—1301))]. From his testimony, they weren't just there for a passing second. They were sitting there. *** And I think that although there was a reason to stop the vehicle, I can't believe that every vehicle that is stopped out on the road for any minor traffic violation is subject to search, ordering people out of the vehicle, and search immediately.

> \* \* \*

> She had learned from the defendant that he had been hunting earlier and that she was going to search for weapons, but the problem is that she couldn't have even looked in the vehicle from what I've heard and seen any weapons or anything.

\* \* \*

> This is a minor traffic stop for illegal parking on the roadway at best; and it would appear from what I heard and what I heard is uncontradicted, it turned into the search subsequent to the defendant being out of the vehicle. In fact, he was ordered out of the vehicle.

\* \* \*

> I am not sure and no one has been able to give me any citation that this officer was acting in an area that she could act in, so the Motion to Suppress is allowed."

The State argues on appeal that defendant's motion to suppress should have been denied because Officer Knight acted properly, was within her jurisdiction when she stopped defendant, and conducted a legal search of his vehicle. We disagree, affirming the trial court's decision to grant the motion to suppress.

The trial court found that defendant was stopped for a minor traffic violation, which turned into a search subsequent to defendant getting out of his vehicle and stating he had been hunting that day. Because the trial court is in the best position to determine the facts and weigh the credibility of the witnesses (*People v. Akis* (1976), 63 Ill. 2d 296, 298, 347 N.E.2d 733, 734; see also *People v. Foskey* (1990), 136 Ill. 2d 66, 76, 554 N.E.2d 192, 197), the trial court's decision on a motion to suppress will not be disturbed unless that finding is determined to be clearly erroneous. *Foskey*, 136 Ill. 2d at 76, 554 N.E.2d at 197.

In reviewing the decision of the trial court to grant defendant's motion to suppress, the first step is to determine the reason Officer Knight stopped defendant. In this case the trial court was at a disadvantage in making such a determination because Officer Knight did not testify at trial. The evidence presented supported the trial court's determination that defendant was stopped pursuant to section 11—1301(a) of the Vehicle Code, which provides:

> "Outside a business or residence district, no person shall stop, park or leave standing any vehicle, whether attended or unattended, upon the roadway when it is practicable to stop, park or so leave such vehicle off the roadway, but in every event an unobstructed width of the highway opposite a standing vehicle shall be left for the free passage of other vehicles and a clear view of such stopped vehicle shall be available from a distance of 200 feet in each direction upon such highway." (Ill. Rev. Stat. 1989, ch. 95½, par. 11—1301(a).)

The trial court's determination that defendant was stopped for a minor violation of the Vehicle Code will not be disturbed as it is supported by the testimony of defendant, the only witness.

The next step is to determine whether Officer Knight had authority to stop defendant for a minor violation of the Vehicle Code. The trial court, relying on the law as inadequately presented by ill-prepared attorneys at the hearing on the motion to suppress, was unsure whether Officer Knight was acting within her jurisdiction in stopping defendant. Section 63b2.2 of the Civil Administrative Code of Illinois (Civil Code) provides for the law enforcement powers of conservation officers as follows:

> "In addition to the arrest powers prescribed by law, Conservation Police Officers are conservators of the peace and as such have all powers possessed by policemen, except that they may exercise such powers anywhere in this State. Conservation Police Officers acting under the authority of this Section are considered employees of the Department and are subject to its direction, benefits and legal protection." (Ill. Rev. Stat. 1989, ch. 127, par. 63b2.2.)

In accordance with section 63b2.2 of the Civil Code, Officer Knight had the power to stop defendant as a matter of law since any vehicle committing a traffic violation within the State of Illinois would be within her jurisdiction.

■ The last step is to determine whether Officer Knight had the authority to search defendant's vehicle subsequent to a lawful stop for a minor traffic violation. The validity of all searches must be determined from the particular facts and circumstances of each case. (*People v. Watts* (1981), 93 Ill. App. 3d 420, 424, 417 N.E.2d 247, 250.) Generally, to justify a full warrantless search of an automobile following a mere traffic violation, the circumstances must reasonably indicate that a more serious crime has been committed. (*People v. Penny* (1989), 188 Ill. App. 3d 499, 502, 544 N.E.2d 1015, 1017; *People v. Lawrence* (1988), 174 Ill. App. 3d 818, 822, 529 N.E.2d 63, 65-66.) Mere suspicion or curiosity is not enough to justify a search. (*Penny*, 188 Ill. App. 3d at 502, 544 N.E.2d at 1017; see *Arizona v. Hicks* (1987), 480 U.S. 321, 326, 94 L. Ed. 2d 347, 354-55, 107 S. Ct. 1149, 1153.) In the alternative, there may be justification to search a vehicle stopped for a minor traffic offense, if there is a "reasonable and articulable suspicion" the defendant is armed and dangerous. (*Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868; *People v. O'Neal* (1990), 203 Ill. App. 3d 654, 657, 561 N.E.2d 448, 450.) Here, Officer Knight did not testify at the hearing on the mo-

tion to suppress, and the evidence presented did not show that Officer Knight believed any crime other than the minor traffic violation or a possible violation of the Wildlife Code (Ill. Rev. Stat. 1989, ch. 61, par. 1.1 *et seq.*) had occurred.

Although Officer Knight did not have the authority to conduct a warrantless search of defendant's vehicle based on a violation of the Vehicle Code, the search took place after Officer Knight questioned defendant about his hunting activities and was, therefore, pursuant to section 1.19 of the Wildlife Code. (Ill. Rev. Stat. 1989, ch. 61, par. 1.19.) The trial court indicated that while the stop was for a minor traffic violation, Officer Knight conducted the search after determining that defendant had been hunting earlier that day, and "this was more than a search for stopping or parking." It appears the trial court determined that defendant was stopped for a violation of the Vehicle Code, but searched pursuant to the Wildlife Code. The trial court made a correct determination of the factual basis supporting Officer Knight's stop and search of defendant's vehicle, and applied the appropriate standard in finding the search illegal.

On cross-examination defendant acknowledged he was informed by Officer Knight he was parked in a wildlife habitat. Defendant also admitted he had been hunting earlier in the day and had killed a deer. Section 1.19 of the Wildlife Code (Ill. Rev. Stat. 1989, ch. 61, par. 1.19) allows conservation officers to examine vehicles which they have "reason to believe" contain wild birds or mammals taken or held in violation of the Wildlife Code. In *People v. Layton* (1990), 196 Ill. App. 3d 78, 552 N.E.2d 1280, *cert. denied* (1991), 501 U.S. 1219, 115 L. Ed. 2d 999, 111 S. Ct. 2830, this court considered a situation where a conservation officer checked "quite a few hunters" and their vehicles for possible violations of the Wildlife Code. The inspections by the conservation officer in *Layton* occurred immediately after the hunters returned to their vehicles from the hunting area. While the defendant in *Layton* was standing at the back of his truck with his dogs, the conservation officer inspected him and the back of his truck for possible violations of the Wildlife Code. The officer was "checking hunting licenses, type of weapon, type of shot used and carried, game harvested and carried in game bags or oversized clothing and, in vehicles, areas or containers which might contain illegal game." (*Layton*, 196 Ill. App. 3d at 79, 552 N.E.2d at 1281.) The officer looked behind the front seat of that defendant's crew-type cab and found an opaque plastic bag of a size which might contain illegal game. The officer discovered cannabis inside the bag. In *Layton*, we held section 1.19 of the Wildlife Code necessarily authorizes some brief stop and investiga-

tion by a conservation officer, and that " '[r]eason to believe,' *i.e.*, probable cause to search, arises from indicia that the person in question is a hunter, immediately or very recently engaged in hunting." (*Layton*, 196 Ill. App. 3d at 88, 552 N.E.2d at 1287.) Those indicia were not present here. The exception we recognized in *Layton* "is a narrow one." (*Layton*, 196 Ill. App. 3d at 88, 552 N.E.2d at 1287.) This case is distinguishable from *Layton* and requires a different result. In *Layton* we found the search was necessary because it occurred immediately after the hunters returned to their vehicles from the hunting area. It was clear from the facts in *Layton* that the individuals inspected were hunters who had "immediately or very recently engaged in hunting." (*Layton*, 196 Ill. App. 3d at 88, 552 N.E.2d at 1287.) In this case defendant testified he had been hunting in the morning, and he told Officer Knight he was done hunting although he had killed a deer earlier that day. Defendant was stopped and searched at approximately 4:30 p.m., many hours after he had finished hunting. There was no testimony indicating that defendant fit a "hunter's profile," *i.e.* wearing hunting garb, carrying a weapon, and carrying game or a game bag. (See *Layton*, 196 Ill. App. 3d at 88, 552 N.E.2d at 1287.) Accordingly, the search conducted by Officer Knight pursuant to the Wildlife Code did not fit into the narrow exception of permissible searches recognized in *Layton*.

■ There are different standards for vehicle searches by conservation officers pursuant to the Wildlife Code and searches pursuant to a routine traffic stop for a violation of the Vehicle Code. Warrantless searches pursuant to section 1.19 of the Wildlife Code are limited to necessary searches by conservation and game officers pursuing possible violations of the Wildlife Code. (*Layton*, 196 Ill. App. 3d at 88, 552 N.E.2d at 1287.) This is a narrow exception. In this case it was not clearly erroneous for the trial court to find defendant's vehicle was unlawfully searched pursuant to the Wildlife Code.

For the reasons stated, we affirm the trial court's finding that the search was unlawful and the trial court's granting of defendant's motion to suppress.

Affirmed.

GREEN, P.J., and LUND, J., concur.